NATIONAL FIREWORKS, Inc.,
et al., Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 5156.

United States Court of Appeals
First Circuit.

Heard Jan. 8, 1957.

Decided April 8, 1957.

Walter Powers, Boston, Mass., with whom George F. Smith, Jr., Washington, D.C., was on brief, for petitioners.

I. Henry Kutz, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Sheldon I. Fink, Attys., Dept. of Justice, Washington, D. C., were on brief, for respondent.

Before WOODBURY and HARTI-GAN, Circuit Judges, and WYZANSKI, District Judge.

HARTIGAN, Circuit Judge.

This is a petition for review of a decision of the Tax Court of the United

States entered March 2, 1956, determining a deficiency in petitioner's excess profits tax for the fiscal year ending August 31, 1943.

The petitioner is an affiliated group of corporations consisting of a common parent, National Fireworks, Inc., hereinafter called Fireworks, and twelve other corporations. Petitioner filed consolidated corporation income tax and excess profits tax returns for the fiscal year beginning September 1, 1942 and ending August 31, 1943.

On July 31, 1942 all of the stock of Automatic Machinery Manufacturing Corp., hereinafter referred to as Automatic, was acquired by petitioner. This stock was sold to Seaboard Commercial Corporation, hereinafter called Seaboard, on December 22, 1942. The receipts, cost of goods sold, deductions and net income of Automatic and its subsidiaries were determined for the period September 1, 1942 to December 31, 1942 and the books of said companies were not closed as of December 22, 1942. Therefore, from the income determined for such period there was eliminated 9/122[1] and the balance was included in the consolidated net income reported in petitioner's consolidated corporation income and excess profits tax returns for its taxable year ending August 31, 1943.

Automatic's cost of goods sold of $570,785.38 was determined, as shown on petitioner's consolidated returns, by adding to the opening inventory of $1,393,269.84, purchases, salaries and wages and other costs to make a total of $2,171,378.15 from which was subtracted the closing inventory of $1,600,-592.77.[2] Partially comprising this closing inventory were four types of machines in various stages of completion. These four items and their respec-

tive values as used to calculate cost of goods sold on the consolidated tax returns are as follows:

U-6 Hob Thread Millers .... $166,242.79
Collier Multiple Purpose
    Machine ............. 438,277.66
Frankel Multiple Purpose
    Lathe .............. 191,706.59
SG-2-B Surface Grinders .. 99,242.02.

It is the valuation of the closing inventory as to these four items in computing the cost of goods sold in petitioner's return for its taxable year ended August 31, 1943 which is in issue here.

The question of the value of Automatic's closing inventory on December 22, 1942 was raised for the first time by an amended petition in 1952, in which petitioner alleged that the closing inventory as to said four items was overvalued by $460,000. In the second amendment of the petition it was alleged that the overvaluation was in the amount of $740,000. Now petitioner contends, as it did at trial, that the overvaluation was in the amount of $703,642.94.

Petitioner's theory, as summarized by the Tax Court, is that Automatic always valued its inventory at the lower of cost or market; that on December 31, 1942 the market value of the four items in question was substantially lower than Automatic's cost; that through inadvertence, the cost figures, rather than the lower market value figures, were used in the computation of Automatic's closing inventory as of December 31, 1942; and that petitioner is now entitled to claim the lower market value, in order that Automatic's return will conform to its customary method of valuing inventory at the lower of cost or market value.

Apparently this revaluation by petitioner of its 1942 closing inventory to

---

[1]. 9 (the number of days from December 22 through December 31) 122 (the number of days from September 1 through December 31).

[2]. The value of Automatic's closing inventory was determined as of December 31, 1942, not December 22, 1942, the date that petitioner sold Automatic to Seaboard. However, it was assumed by the Tax Court, and will be assumed here, that the inventory figures as of December 22 were the same as of December 31.

some extent was based on the fact that the Commissioner, in determining a deficiency on Seaboard's return for the taxable year ending December 31, 1943, ruled in effect that certain inventory items of Automatic, also in issue here, had been overvalued in Seaboard's opening inventory.[3] As mentioned above, Seaboard purchased the stock of Automatic from petitioner on December 22, 1942. Accordingly, petitioner urges that if, under the Commissioner's ruling, these items were overvalued in Seaboard's opening inventory, they must have been overvalued in petitioner's closing inventory since presumably petitioner's closing inventory and Seaboard's opening inventory were the same.

The Tax Court ruled that the Commissioner's determination in the Seaboard case was immaterial and placed the burden on petitioner to go forward with any other evidence it could adduce to prove its inventory was overvalued. Thus, petitioner, in attempting to prove that the aforementioned four inventory items were overvalued, introduced the testimony of five witnesses, certain exhibits and a joint stipulation of the parties.

The Tax Court held, on two grounds, that petitioner could not reduce its 1942 closing inventory figures as to Automatic. The first ground was that "petitioner has not shown that Automatic's opening inventory was valued at the lower of cost or market, and without such a showing, the necessity for consistency requires that the closing inventory cannot be valued by such method." The second ground generally was that petitioner "has not established that the four items had a market value of $703,642.94 less than the amounts

set forth in the computation of Automatic's cost of goods sold."

Since we believe that the first ground presents sufficient basis for affirming the Tax Court's decision, we deem it unnecessary to consider the second ground.

The Tax Court, in holding that petitioner had failed to show that Automatic's opening inventory was valued at the lower of cost or market, stated that there was "no evidence whatever as to the basis on which Automatic's opening inventory was valued." This statement, petitioner urges, misstated the evidence since Elder, treasurer of Automatic, and Reynolds, assistant treasurer of Fireworks, testified that the inventories of Automatic for tax purposes were kept at cost or market whichever was lower.

We believe that petitioner unduly emphasizes the above language of the trial judge. When taken in context with later passages in the opinion, it is clear that the trial judge merely concluded that petitioner had not shown the basis of Automatic's opening inventory. Certainly it was not clearly erroneous for the trial judge to so find, since the testimony of Elder and Reynolds on this point was so general as to be of little value.[4] In any event the Tax Court was not required to blindly accept the testimony of these two witnesses which was the only evidence on this point in the case. See Gem Jewelry Co. v. Commissioner of Internal Revenue, 5 Cir., 1948, 165 F.2d 991, certiorari denied 1948, 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770.

It seems to us that petitioner in order to show the basis of its opening inven-

3. Seaboard, on March 1, 1951, petitioned the Tax Court for redetermination of the asserted deficiency and the case is now before the Tax Court (Docket No. 32857) pending this appeal.

4. Elder, treasurer of Automatic, gave this testimony:
"Q. Were the inventories at Automatic for tax purposes kept at cost or market whichever was lower?

"A. They were."
And Reynolds, assistant treasurer of Fireworks, testified:
"Those corporations [including Automatic] are itemized at cost or market as far as their inventory is concerned * * * only the items of finished goods which are included at contract prices, which are separately shown, all other items of inventory are declared at cost or market, whichever is lower."

tory was the lower of cost or market had to present some evidence of both the cost and market values of its opening inventory. For only with such evidence could petitioner prove it took the lower of the two values for its opening inventory. In this connection the testimony of Elder and Reynolds was not enough.

■ In the absence of proof tending to establish that the opening inventory was valued at the lower of cost or market, the Tax Court correctly held that petitioner could not be permitted to value its closing inventory on that basis. This follows from the accounting principles underlying our tax system, as recognized by the Supreme Court in Lucas v. Kansas City Structural Steel Co., 1930, 281 U.S. 264, 268, 50 S.Ct. 263, 265, 74 L.Ed. 848, where it states:

" * * * The Federal income tax system is based upon an annual accounting period. This requires that gains or losses be accounted for in the year in which they are realized. The purpose of the inventories is to assign to each period its profits and losses. * * * "

See also United States Cartridge Co. **v.** U. S., 1932, 284 U.S. 511, 52 S.Ct. 243, 76 L.Ed. 431.

■ It is a familiar standard that each period can be assigned its profits and losses only if the opening and closing inventories of the same year are reported on the same basis. See Reuben H. Donnelley Corporation, 1931, 22 B.T.A. 175; J. M. Radford Grocery Co., 1930, 19 B.T.A. 1023; Wilson Furniture Co., 1928, 10 B.T.A. 1294. The statement of the court in Guy v. Commissioner of Internal Revenue, 4 Cir., 1929, 35 F.2d 139, 141 seems particularly pertinent in this respect:

"The correctness of the board's refusal to permit the taxpayer to

revalue the merchandise of the firm is further supported by the failure of the taxpayer to show the basis upon which the inventory for its fiscal year was computed. Section 203 of the Revenue Act of 1918 provides that inventories shall be taken by a taxpayer upon such basis as the Commissioner, with the approval of the Secretary may prescribe as conforming to the best accounting practice. Sections 1581 and 1582 of Treasury Regulations 45 require that inventories must be valued either at cost price or at cost or market price, whichever is lower, and that whichever basis is adopted must be applied consistently to the entire inventory. It is obvious that, unless this regulation is followed, the taxable income of a business cannot be ascertained. The evidence fails to show that the inventory compiled by the taxpayer at the beginning of the taxable year ending June 30, 1920, was computed on the basis of market price as distinguished from the basis of cost. It follows that on this ground alone the decision of the Board of Tax Appeals was correct."

■ It clearly would be a misstatement of income for the period September 1 to December 22, 1942, if the opening inventory was valued at cost in spite of a lower market, and the closing inventory was inconsistently based upon a market lower than cost. Taxpayers cannot choose to value an opening inventory at cost, when the market was lower, and then have the benefit of valuing a closing inventory at the lower of cost or market. A proper reflection of income can be obtained only by the consistent use of one method or the other. The demand for consistency in valuation of inventories is clearly expressed in the Treasury Regulations.[5]

---

5. U.S.Treas.Reg. 111, § 29.22(c)–2: *Valuation of inventories*

    (a) Section 22(c) provides two tests to which each inventory must conform:

      (1) It must conform as nearly as may

be to the best accounting practice in the trade or business, and

      (2) It must clearly reflect the income.

    (b) It follows, therefore, that inventory rules cannot be uniform but must give ef-

For the foregoing reasons, we believe the basis of valuation of the opening inventory is an essential issue where a taxpayer, as here, strives to revalue his closing inventory, and, further, the taxpayer must show this basis.[6] Without such showing it is possible that the four items here were equally overvalued in Automatic's opening inventory. If this were so, the loss, if any, was incurred in an earlier year and would not be available to the petitioner for the period in issue.

Nor do we believe that the Commissioner's determination that certain inventory items in issue were overvalued by Seaboard in its opening inventory excuses the petitioner from showing the basis used to value its own opening inventory. The fact that the Commissioner may be attempting to hold Seaboard to a lower of cost or market as to its opening inventory on these items does not have any significance as to the petitioner's situation. It could be that Seaboard, assuming it is operating under a lower of cost or market basis, may have to enter these items in its opening inventory at market value if it is proved that in January 1943 their market value was lower than cost. This would not help petitioner since it is precluded from proving that the market values of its closing inventory in December 1942 were lower than the cost values if it did not also show that its opening inventory was valued on the same basis.

The petitioner also contends that the trial judge to an undue extent controlled the presentation of the petitioner's evidence. Although we do not think it advisable for a trial judge to "take over" a litigant's case, we cannot say on this record that the trial judge's participation resulted in prejudice to the petitioner.

A judgment will be entered affirming the decision of the Tax Court.

---

fect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is substantially in accord with these regulations. * * *

6. This rule seems to have been recognized but not applied in Western Wheeled Scraper Co., 1928, 14 B.T.A. 496, since the pleadings in that case did not place the opening inventory in issue.